Gary Grimm
837 Swede St.
Norristown, PA 19401
610 – 275-5855
GaryrGrimm@Hotmail.com

**UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| In re: | : | CHAPTER 13 |
| | : | |
| Gary GRIMM | : | |
| | : | Case No. 17-10625 (MDC) |
| Debtor | : | |

**MEMORANDUM OF LAW IN SUPPORT OF RESPONSE OF DEBTOR TO MOTION OF JCPR, LLC AND JOHN CAMPION TO ENFORCE SETTLEMENT AGREEMENT AND RELEASE AGAINST DEBTOR GRIMM BROTHERS REALTY CO. AND DEBTOR GARY GRIMM**

Debtor GARY GRIMM hereby files this Memorandum of Law in Support of his Response to the Motion of JCPR, LLC and John Campion to Enforce Settlement Agreement and Release Against Debtor Grimm Brothers Realty Co. and Debtor Gary Grimm (the "Motion"), and sets forth the following in support thereof.

The Motion presents this Honorable Court with the question of whether it should enforce the terms of a settlement agreement against the Debtor. This Honorable Court has requested that the parties file memorandums of law to determine the threshold questions of whether JCPR, LLC and John Campion violated the stay order issued by this Court when they accepted the deed to the Real Property (defined below) owned by Grimm Brothers and transferred by the Sheriff of Montgomery County to the Movants, when distributions from proceeds of the Tax Sale (defined below) of the Real Property were made, and when the Movants refused entry to the Real Property to the Debtor so he might access personal property belonging to Debtor Grimm Brothers.

**Background**

Movant, John Campion, was the successful bidder at a Montgomery County, Pennsylvania, Real Estate Division Judicial Sale (the "Tax Sale") of 839 Swede Street, Norristown PA (the "Real Property") on or about October 26, 2016. Movant Campion attended and bid on the Real Property at the Tax Sale. Following the Tax Sale, Grimm Brothers Realty Co. ("Grimm Brothers") filed Exceptions to the proposed distribution, identifying numerous errors, including, but not limited to, duplication of sheriff's fees, distributions to the municipality for items that were already paid, and payments to the Pennsylvania Department of Revenue that the Debtor previously paid.

Prior to the Tax Sale, Grimm Brothers filed for bankruptcy protection before this Honorable Court on or about April 28, 2015 at Case No. 15-12921 (the "2015 Bankruptcy"). The 2015 Bankruptcy was ultimately dismissed, but Grimm Brothers filed a motion for reconsideration which was later transformed into a motion for leave to file a new chapter 11 bankruptcy. On January 19, 2017, this Honorable court entered an order approving the Debtor's request for expedited consideration of its Motion for leave to file a new chapter 11 bankruptcy (the "Order to Expedite"). See Exhibit "A" to Debtor's Response. Paragraph 3 of the Order to Expedite provides, "[b]ecause this Court could not accommodate both the Debtor's request for a hearing prior to January 25, 2017 and a hearing date that all counsel could attend, and finding that the Debtor has alleged *prima facie* grounds for the relief sought therein, ***all collection efforts,*** including any scheduled judicial sales, with respect to (a) 837 Swede Street, Norristown, PA; (b) 901 Swede Street, Norristown, PA; (c) 857 Cherry Street, Norristown, PA; and/or (d) 636 Cherry Street, Norristown, PA, ***are hereby STAYED until further order of this Court***" (emphasis added).

Despite the issuance of a stay order (the "Stay Order") by this Honorable Court, on or about March 15, 2017, the Montgomery County Court of Common Pleas entered an Order

transferring the deed to the Real Property to the Movants. The Sheriff's Office of Montgomery County (the "Sheriff") and Campion were aware of the stay in effect at the time via filings made by Grimm Brothers prior to March 15, 2017 in state court, including Exceptions to the proposed distribution that highlighted the Stay Order.

In early April 2017, while the Stay Order was still in effect, the Movants took possession of the Real Property by changing the locks on the Real Property without informing the Debtor. The Debtor discovered the action taken by Movants only after he attempted to access property belonging to Grimm Brothers and was unable to access it due to the new locks, at which point, Mr. Grimm requested and Campion provided a key to access the Real Property. Mr. Grimm was able to access the Real Property until December 2017, when Campion and/or JCPR added a new lock.

Debtor informed Campion in December 2017 and, again, in January 2018 that he needed a key to the additional lock the Movants added in order to access the storage space. Campion did not provide the additional key to Mr. Grimm. On February 28, 2018, an employee of Grimm Brothers, not Gary Grimm, accessed the storage area and removed the additional lock to the space. Grimm Brothers had not been evicted and the Movants had not obtained an eviction order or an order for possession, as required by Section 250.505a of the Pennsylvania Landlord and Tenant Act. Accordingly, the Debtor's representative possessed the legal right to enter the Real Property to obtain personal property belonging to the Debtor. Despite these legal deficiencies, the Movants pursued criminal charges against Mr. Grimm. Mr. Grimm was thereafter arrested and incarcerated over 30 days.

After more than 30 days in prison, the Debtor was presented with the Settlement Agreement that Movants are seeking to enforce herein.

### The Transfer of Deed and Distribution of Funds Constituted a Violation of the Stay Order Pursuant to 11 U.S.C. § 362

The commencement of a case in Bankruptcy creates an estate comprised of, among other things, all legal or equitable interests of the debtor in property as of the commencement of the case. See 11 U.S.C. § 541(a)(1). Section 541 of the Bankruptcy Code was intended to have a broad sweep. Property of all kinds, whether tangible or intangible, as well as all other forms of property specified in the former Bankruptcy Act are included. See U.S. v Whiting Pools, Inc., 462 U.S. 198, 205 n. 9, 103 S. Ct. 2309, 2314 n. 9, 76 L.Ed.2d 515 (1983).

Under Pennsylvania law, legal title to property purchased at a sheriff's sale does not pass to the purchaser until acknowledgement and delivery of the sheriff's deed occurs. See In re Rouse, 48 B.R. 236, 240 (Bankr. E.D.Pa. 1985). The owner is entitled to possession of the premises until the deed is acknowledged and delivered. See Garrett v. Dewart, 43 Pa. 342 (1862).

There is little case law in the judicial record that addresses a fact pattern similar to the one at hand. Many cases have deliberated on whether certain post-sale actions, such as transfer of title, are to be construed as a violation of a stay in bankruptcy court. Ministerial acts, even if undertaken in a state judicial proceeding subsequent to a bankruptcy filing, do not fall within the proscription of the automatic stay. See Spares v Brockton Credit Union, (In re Soares), 107 F.3d 969, 975, 976 (1st Cir. 1997). A ministerial act is one that is essentially clerical in nature. Thus, when an official's duty is delineated by, say, a law or a judicial decree with such crystalline clarity that nothing is left to the exercise of the official's discretion or judgment, the resultant act is ministerial. Id. at 974.

Determination of whether the transfer of title or order for distribution falls under the protections of the stay is for the court to decide. In the instant case, Movants failed to seek relief from the automatic stay. After a sheriff's sale occurs, but before the deed is transferred, the interests of a debtor on the date the bankruptcy is filed are "(1) legal title, since the

sheriff's deed had not been issued, and (2) possession subject to the rights acquired by the third-party buyer through the foreclosure and sheriff's sale." <u>In re Cooper, Inc.</u>, Case No. 16-11235 at p. 8 (Bankr. Kan., 2017). Although the <u>Cooper</u> Court determined that cause existed to grant relief from the automatic stay, the movant was required to first obtain relief before taking possession of the property. Here, Campion and JCPR did not obtain relief from the automatic stay prior to denying access to the Real Property to Grimm Brothers' agents, despite Grimm Brothers having such rights.

Instead, Campion filed a criminal complaint against Mr. Grimm that ultimately led to his incarceration and the near financial collapse of the Grimm Brothers because its employees could not be paid. These individuals, therefore, left the employ of Grimm Brothers. Tenants were subsequently unable to contact management to request the resolution of problems in their apartments that required the attention of Grimm Brothers. As a result, some tenants prematurely vacated their apartments, causing a financial hemorrhaging for Grimm Brothers and the Debtor. Accordingly, Debtor's losses as a result of this stay violation were substantial. The following is an itemization of the damages to the Debtors:

1. $37,910 rental losses from tenants vacating and breaking leases and units remaining vacant from March 2018 to 2019;
2. $1,000 for criminal attorney Abigail Leeds;
3. $3,535 for attorney Erik Jensen billed for time spent on criminal complaint;
4. $295 for prison expense;
5. $600 for care of dog;
6. $400 for care of cats;
7. $7,000 rental loss to operations manager, Gary Grimm for personal residence; and
8. $81,713 in Social Security income for Gary Grimm.*

*Debtor was working on his personal residence with anticipation of having a new tenant in by June 2018. That did not come to fruition due to his incarceration. He was holding off applying for Social Security benefits on his own account until he turned 70 in less than three years. Social Security benefits increase by 8% per year maximizing at the age of 70. In July of this year, Mr. Grimm becomes eligible for Social Security benefits under his ex-wife's income because she turns 62 that month. Beginning in August of this year, he would be receiving $1,420 per month. Applying for Social Security benefits under his income now, he will receive $1,551 per month. Once he turns 70 he can switch over to his maximum amount of Social Security under his name. He will receive an additional $384 per month in Social Security benefits for

a total monthly income of $1899. Living another 20 years from when he turns 70 would be an additional $92,160 in untaxed income. The loss he suffers not applying under his ex-wife's name until he turns 70 is $4,192, plus the $6,255 he would receive under his name presently retroactive back six months. The total loss he will suffer over the life of his social security benefits will be $81,713, due to his unlawful incarceration.

After Debtor was released from prison the financial bleeding did not end due to the medical problems that arose with Mr. Grimm during his incarceration and missing a Medicare filing deadline that left him without medical coverage.

Any argument that the Movants did not need to obtain stay relief must be rejected. If there is a bona fide dispute over whether a debtor has an interest in the property, the non-debtor party should assume that it is indeed property of the estate protected by the stay and not proceed. It should, instead, file a motion for relief from the stay. See Brown v. Chestnut (In re Chestnut), 422 F.3d 298, 300 (5th Cir. 2005); see also, ElbarInvs., Inc. v. Okedokun (In re Okedokun), 2018 Bankr. LEXIS 2990, at 104.

Moreover, the distribution of the proceeds from the Tax Sale falls outside the definition of a "ministerial act" as defined above, and within the protections of the court ordered stay.  A duty is ministerial if the obligation to act is peremptory and plainly defined. A ministerial act is one which the law prescribes and defines with such precision as to leave nothing to exercise of discretion or judgment.  See Neal v. Regan, 587 F.Supp. 1558, 1562, (N.D. Ind.1984).  Grimm Brothers filed a timely objection to the distribution of proceeds and a hearing was held on the matter.  The fact that the distribution was a point of deliberation in court that required a judge to exercise judgement on the matter should render the process beyond the scope of any ministerial exception to violation of the Stay Order.  Accordingly, Movants should have, but failed to, seek relief from the Stay Order prior to the distribution of proceeds.

The Order to Expedite was issued in anticipation of Grimm Brothers' filing of its current bankruptcy petition.  Accordingly, the stay included in the Order to Expedite barred

any and all collection efforts. At the time the Order to Expedite was issued, Grimm Brothers had legal interest in the Real Property and legal and equitable interests in personal property located inside the Real Property. Grimm Brothers had not yet been evicted, nor was he served with any order for possession. Debtor had a right to the property insofar as the Debtor had personal belongings remaining on the property that were yet to be retrieved or relocated.

### Movants Violated the Automatic Stay When they Locked Out Debtor Without Providing Notice of Intent

On or about March 13, 2018, Movants filed criminal charges against Debtor for trespass for trying to access Grimm Brothers' personal property. At the time of the dispute, an automatic stay was in effect subsequent to the filing of the current petition. The courts have long held that the automatic stay offers broad protection to the debtor.

> The automatic stay provision, is one of the fundamental debtor protections provided by the bankruptcy laws. It gives the debtor a breathing spell from his creditors. It stops all collection efforts, all harassment, and all foreclosure actions. It permits the debtor to attempt a repayment or reorganization plan, or simply to be relieved of the financial pressures that drove him into bankruptcy.
>
> H.R.Rep. No. 595, 95th Cong., 1st Sess. 340, (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5963, 6296-97.

The automatic stay provision restrains a broad range of conduct, including the continuation of litigation, the enforcement of prepetition judgments, the creation or enforcement of liens against property of the estate and, most broadly, any act to collect, assess, or recover a claim against the debtor which arose prepetition. See generally, Delpit v. Commissioner, Internal Revenue Service, 18 F.3d 768, 772 (9th Cir. 1994).

Grimm Brothers had stored and continues to store personal property in the basement of the Real Property. This personal property was included in Grimm Brothers' petition for bankruptcy relief, and as such was made part of the bankruptcy estate pursuant to 11 § 541(a)(1). As cited above, the automatic stay operated to protect Grimm Brothers' interests

with regard to all legal and equitable interest in the property. This included Grimm Brothers' legal rights with respect to the Real Property in which it stored personal property.

Pennsylvania's Landlord Tenant Act § 250.505(d) provides guidance on how to handle personal property left behind when a tenant relinquishes possession of real property. The statute provides as follows:

> Prior to removing or disposing of abandoned property, the landlord must provide written notice of the tenant's rights regarding the property. The tenant shall have ten days from the postmark date of the notice to retrieve the property or to request that the property be stored for an additional period not exceeding thirty days from the date of the notice. If the tenant so requests, the landlord must retain or store the property for up to thirty days from the date of the notice. Storage will be provided at a place of the landlord's choosing and the tenant shall be responsible for costs. At all times, the landlord shall exercise ordinary care in handling and securing the tenant's property and shall make the property reasonably available for purposes of retrieval.

Additionally, 250.505(f) of the Pennsylvania Landlord Tenant Act provides that "[u]nder no circumstances may a landlord dispose of or otherwise exercise control over personal property remaining upon inhabited premises without the express permission of the tenant. If the conditions under which personal property may be deemed abandoned no longer exist, the landlord shall have no right to dispose of or otherwise exercise control over the property."

Even when a tenant has been properly evicted from premises, a landlord, as the bailed of any and all property left behind by the tenant, must exercise reasonable care in preserving and protecting that property. See In re B. Cohen & Sons Caterers, Inc., 97 BR 808, 813 (Bankr. E.D. Pa., 1989); also, See In re Murphy Worldwide Transportation Services, Inc. (Zimmerman v. Campbell), Bankr No. 83-04911F, Av. No. 86-0147F, slip op. at 10-11 (Bankr. E.D.Pa. July 5, 1988). At the time the automatic stay was in effect and before receiving any notification regarding the Movants' intent toward disposition of the property, Debtor had a right to lawfully enter onto the premises to retrieve personal belongings that

were left behind and were part of the Grimm Brothers bankruptcy estate. Movants acknowledge that arrangements were made for Debtor to retrieve the personal property. After initially being locked out, Debtor was provided with a key for access to the property. However, on or about March 13, 2018, Debtor's agent arrived at the Real Property to find that an additional lock had been added to the property without any notice from the owner. Debtor's agent, Mr. Grimm, believed with the key in hand for access to the property, that this was a mistake. In his capacity as manager of the Debtor, Mr. Grimm had an employee of Grimm Brothers access the storage area and remove the additional lock to the storage space. In response, Movants called the police and filed criminal charges against Gary Grimm for criminal trespass, defiant trespass, and criminal mischief.

Mr. Grimm spent over 30 days in prison without an arraignment. Only after more than 30 days in prison, on charges that Debtors believe were without merit, Mr. Grimm was offered the settlement and release agreement that Movants now seek to enforce. Mr. Grimm signed the release agreement on his behalf but not on behalf of the company. This settlement agreement should not be enforced against Grimm Brothers because the criminal charges were against Gary Grimm personally, and were without merit. Debtors had been given a new key to the premises for access to the personal property. Debtors did not receive any notice that a new lock would be added. And Debtors did not receive any notice regarding any intended disposition of the property. When the Movants added additional locks without providing adequate notice or communication to the Debtors, they violated the automatic stay. Movants were made aware that the stay was in effect, and did not seek appropriate relief from this Honorable Court.

**Conclusion**

ACCORDINGLY, for the reasons set forth in the foregoing *Response to the Motion of JCPR, LLC and John Campion to Enforce Settlement Agreement and Release Against Debtor Grimm Brothers Realty Co. and Debtor Gary Grimm* and in consideration of this *Memorandum of Law* and any response thereto, Debtor Grimm Brothers Realty respectfully moves that this Honorable court enter an order denying the Motion to Enforce Settlement Agreement and Release Against Debtor Grimm Brothers Realty Co. and Debtor Gary Grimm; and providing for other such legal and/or equitable relief that it deems proper, including damages caused by Movants' violation of the automatic stay.

    /s/ *Gary Richard Grimm*
    Gary Richard Grimm

Dated:  March 8, 2019